UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM AERRON BRADY,

        Petitioner,

                                CASE NO. 2:10-CV-12978

    v.                          JUDGE MARIANNE O. BATTANI
                                MAGISTRATE JUDGE PAUL J. KOMIVES

CATHERINE S. BAUMAN,

        Respondent.[1]

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.    *Claims IV and V* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2.    *Claims VIII-X* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.    *Sufficiency of the Evidence (Claims I-III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                a. Assault . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                b. Unlawful Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                c. Resisting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    F.    *Prosecutorial Misconduct (Claims IV-V & VIII-IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        1.    *Res Gestae Witness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        2.    *Improper Comments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
                a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
                b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        3.    *Perjured Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
                a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
                b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
        4.    *Denial of Discovery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
                a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
                b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    G.    *Sentencing and Restitution (Claims VI-VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
        1.    *Inaccurate Information* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

_____

[1]By Order entered this date, Catherine S. Bauman has been substituted in place of Cindi Curtin as the proper respondent in this action.

          2.      *Restitution* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
      H.   *Ineffective Assistance of Counsel (Claims IV & X)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
          1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
          2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
                  a. Missing Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
                  b. Failure to Investigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
      I.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 50
          1.      *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
          2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
      J.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*        *        *        *        *

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

II.   <u>REPORT</u>:

A.    *Procedural History*

       1.    Petitioner William Aerron Brady is a state prisoner, currently confined at the Alger

Correctional Facility in Munising, Michigan.

       2.    On March 7, 2008, petitioner was convicted of assault with intent to do great bodily

harm less than murder (as a lesser offense of an assault with intent to commit murder charge, on

which petitioner was acquitted), MICH. COMP. LAWS § 750.84; unlawful imprisonment, MICH.

COMP. LAWS § 750.349b; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; felonious

assault, MICH. COMP. LAWS § 750.82; possession of a firearm during the commission of a felony,

MICH. COMP. LAWS § 750.227b; and two counts of resisting or obstructing a police officer, MICH.

COMP. LAWS § 750.81d(1), following a jury trial in the Macomb County Circuit Court.  Petitioner

was acquitted on three additional charges of felonious assault.  On April 16, 2008, he was sentenced

as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 19-60 years'

imprisonment for each of the assault with intent to commit great bodily harm, unlawful

2

imprisonment, and felon in possession convictions, and 5-15 years' imprisonment for each of the felonious assault and resisting convictions. Petitioner was also sentenced to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    DEFENDANT'S CONVICTIONS FOR ASSAULT WITH INTENT TO DO GREAT BODILY HARM LESS THAN MURDER MUST BE REVERSED WHERE THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE TO SATISFY THE DUE PROCESS STANDARD OF GUILT BEYOND A REASONABLE DOUBT.

II.   THE EVIDENCE OF UNLAWFUL CONFINEMENT IS INSUFFICIENT, DEFENDANT HAS BEEN DENIED DUE PROCESS, AND HIS CONVICTION MUST BE REVERSED.

III.  THE EVIDENCE OF RESISTING AND OBSTRUCTING A POLICE OFFICER WAS INSUFFICIENT, DEFENDANT HAS BEEN DENIED DUE PROCESS OF LAW, AND HIS CONVICTIONS MUST BE REVERSED.

IV.   DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BY THE PROSECUTOR'S FAILURE TO PRODUCE AN IMPORTANT RES GESTAE WITNESS REQUESTED BY THE DEFENSE; TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST A DUE DILIGENCE HEARING OR A MISSING WITNESS INSTRUCTION.

V.    DEFENDANT WAS DENIED A FAIR AND IMPARTIAL TRIAL AS A RESULT OF THE PROSECUTOR'S NUMEROUS IMPROPER AND INFLAMMATORY COMMENTS.

VI.   DEFENDANT WAS DENIED HIS RIGHT TO BE SENTENCED ON THE BASIS OF ACCURATE INFORMATION AND HE MUST BE RESENTENCED.

VII.  THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING RESTITUTION FOR CONDUCT DENIED BY DEFENDANT.

VIII. THE TRIAL COURT COMMITTED PLAIN ERROR IN IMPOSING ATTORNEY FEES WITHOUT FINDING THAT DEFENDANT HAD THE

ABILITY TO PAY.

Petitioner filed a *pro se* supplemental brief raising three additional claims:

    I.      WHETHER THE DEFENDANT'S CONVICTIONS FOR FELONY FIREARM AND FELON POSSESSING A FIREARM MUST BE REVERSED WHERE THE PROSECUTOR RELIED ON PERJURED TESTIMONY AND FALSELY MANUFACTURED EVIDENCE TO OBTAIN SAID CONVICTIONS VIOLATING THE DEFENDANT'S RIGHT TO DUE PROCESS THROUGH THE ACT OF PROSECUTORIAL MISCONDUCT.

    II.     WHETHER THE DEFENDANT WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL AND HIS CONVICTION MUST BE REVERSED FOR DENIAL OF DISCOVERY.

    III.    WHETHER THE DEFENDANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WERE DENIED AND HIS CONVICTION MUST BE REVERSED FOR INEFFECTIVE ASSISTANCE OF COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Brady*, No. 285640, 2009 WL 3365776 (Mich. Ct. App. Oct. 20, 2009) (per curiam).

    4.     Petitioner, through counsel, sought leave to appeal these issues to the Michigan Supreme Court.[2] The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Brady*, 485 Mich. 1128, 779 N.W.2d 804 (2010).

    5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 28, 2010. As grounds for the writ of habeas corpus, he raises the claims that he raised in the state courts, with the exception of his claim challenging the trial court's assessment of attorney fees.

    6.     Respondent filed her answer on March 11, 2011. She contends that petitioner's fourth, eighth, ninth, and tenth claims, as well as the first two parts of petitioner's fifth claim, are

---

    [2]Respondent contends that petitioner's three supplemental claims were not raised in the Michigan Supreme Court. This issue is discussed below in the section addressing respondent's procedural default argument, *infra* part C.

4

barred by petitioner's procedural default in the state courts, and that petitioner's remaining claims

are without merit or not cognizable on habeas review.

      7.      Petitioner filed a reply to respondent's answer on April 25, 2011.

B.     *Factual Background Underlying Petitioner's Conviction*

      Petitioner's convictions arise from his assault on Joanne Hornberger, from whom he was

renting a room.  The evidence adduced at trial was accurately summarized in the brief filed by

petitioner's counsel in the Michigan Court of Appeals:

> The complainant, Ms. Hornberger, testified that she was a good friend of Mr. Brady and that he moved into a room in her house after her husband died.  Prior to that, she would visit him frequently and spend the night at her house.  He helped her with many jobs around the home.  The witness testified that she wrote to Mr. Brady when he was in jail, and defense counsel objected.  Ms. Brady worked for the al-anon organization. On June 6, 2007, she was unable to start her van.  Mr. Brady told her she needed a new battery, and he requested a ride from a neighbor to a parts store to buy it for her.  He installed the battery, but later Ms. Hornberger experienced more problems starting the van.  She claimed that Mr. Brady was angry and cursed at her.
>
> Ms. Hornberger left in the van and returned.  Mr. Brady was home.  She went into her bedroom and he allegedly followed her, struck her, pulled her by her hair and threw her on the bed.  Then he proceeded to beat her on the head with a drawer from her dresser.  He put a pillow over her face on two occasions, and shoved a $20.00 bill in her mouth.  He threatened her with a knife.  She also alleged that Mr. Brady loaded her husband's rifle and a .25 [caliber] pistol she had given to Mr. Brady.  He fired the rifle to see if it worked.  Defendant tried to load the .25 the wrong way and it would not fire.  At some point, he allegedly fired shots from the rifle in the bedroom, but Ms. Hornberger did not know when.
>
> Ms. Hornberger claimed that in the middle of the night Defendant took her to the store down the street, but it was closed.  She saw someone peeking out of a window on the way, but did not signal or call out to that person.  She claimed that Defendant shut off all her telephones, but she was able to call out. Instead of calling for help, she merely called in to work to say she would be late.  A half hour later, she received a call.  She claimed that Defendant said he would shoot if a cop walked in.  Mr. Brady left for work at about 6:45 in the morning.  Ms. Hornberger contacted a friend, who took her to the police station, where she wrote a statement, and then to the hospital.  She was examined but not admitted.  She had some bruises on her arm.  Her statement to the police did not contain much of what she later claimed at trial.  Ms. Hornberger was upset with Mr. Brady prior to the alleged incident because he had indicated that he was going to move out, and she would be lonely.  Also, she

thought that he owed her some rent money.

The doctor who examined Ms. Hornberger testified that there were bruises on her arms, face and shoulders, but no cuts or lacertations. The complainant had taken aspirin, and that can cause bruises to be accentuated. All of the tests and x-rays were negative. A splint was placed on her wrist because she said it hurt, but it was not fractured. She had arthritis in her wrist. Nowhere in the medical report did Ms. Hornberger state that she was struck with a drawer or any type of weapon, or that she was smothered. She was released. Ms. Hornberger was on multiple medications, including anti-depressants and mood-altering medications.

Christopher Genna, Ms. Hornberger's next door neighbor, testified that Mr. Brady came to him for help but he did not have any jumper cables, so he took Defendant to the auto parts store to purchase a battery. He claimed that Mr. Brady smelled of alcohol. Mr. Genna could her Defendant talking to Ms. Hornberger from inside his home, and he did not hear any gunshots that evening. He left for work at about 11:00 p.m. The police never asked him whether he heard anything. Mr. Genna's wife, Aimee, was home all night and did not hear any gunshots.

Dennis Cantrall testified that Ms. Hornberger came into the club (where she worked) the next morning and she was bruised. He followed as Debbie drove her to the police station. He went to Ms. Hornberger's house to get her things, and the police were there. He was allowed to go into the house while the police were conducting their search. Ms. Hornberger's granddaughter took photographs of the complainant at her apartment. The photos were admitted.

Police officers went to Ms. Hornberger's home and observed some bullet holes in the walls. They had no idea when the bullet holes appeared. Some .22 caliber bullets were seized. Officer Todd Murdock took photographs. A rifle was seized from a closet. They did not preserve the scene or dust for prints anywhere. The police did not take any samples to test for DNA on Ms. Hornberger's pillow or anywhere else. The drawers were in the dresser. Ms. Hornberger's friend and daughter helped the police find the number for Mr. Brady's boss. The police did not canvass the neighborhood for witnesses. Ms. Hornberger brought some bullets to the police station, but the police did not take them.

Several armed police officers stormed into the house where Mr. Brady was working and ordered him to the floor. According to Officer Murdock Defendant was crouched down when the police entered, and as soon as he straightened up, the officer took him down, two officers were on his back and pulled his arms back and handcuffed him. As the officers entered, they were shouting "get down." Officer Murdock testified that their purpose was "we do not want him to have time to respond." Another officer claimed that Mr. Brady did not respond right away but stood looking at the officer. Officer Burgeois allegedly took a pistol from Mr. Brady's pocket. The police did not perform a gun residue test on Mr. Brady.

The following day, a booking photograph of Mr. Brady was admitted, showing his injuries. Mr. Brady sustained injuries to his face and head as a result of the officers' actions and was later taken to the hospital.

A stipulation was entered that Defendant had a prior felony for purposes of

6

the felon in possession charge.  The trial court denied Defendant's motion for a directed verdict, and denied his [motion] for instructions on aggravated assault and felonious assault as lesser offenses of assault with intent to murder.  Defense counsel later objected.  The prosecutor never produced David Wilson, who was present with Mr. Brady at the house where he was arrested.

During closing arguments, the prosecutor referred to the "horror" and the "torture" that Ms. Hornberger underwent.  The prosecutor also state that the police officers took the complainant so seriously that they wanted Defendant in custody right away.  Trial counsel moved for a mistrial because the prosecutor stated that Defendant was guilty and referred to the "story" defense counsel came up with after reading the police reports.  The mistrial motion was denied.

Def.-Appellant's Br. on Appeal, in *People v. Brady*, No. 285640 (Mich. Ct. App.), at 2-5.

C.    *Procedural Default*

Respondent first contends that petitioner's fourth, eighth, ninth, and tenth claims, and portions of petitioner's fifth claim, are barred by petitioner's procedural default in the state courts.  With respect to petitioner's fourth and fifth claims, respondent contends that petitioner defaulted these claims by failing to object at trial.  With respect to the other claims, respondent contends that petitioner failed to exhaust these claims by raising them in the Michigan Supreme Court, and that petitioner's failure to exhaust has become a procedural default because petitioner cannot now raise them in the state courts.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be

7

interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default."). Here, the Court should conclude that although petitioner's fourth claim and portions of his fifth claim are defaulted, it is nevertheless necessary to consider the claims on the merits. The Court should also reject respondent's argument that petitioner's eighth, ninth, and tenth claims are defaulted.

1.    *Claims IV and V*

In Claim IV, petitioner contends that he was denied a fair trial by the prosecutor's failure to produce a *res gestae* witness, David Wilson. In Claim V, petitioner contends that he was denied a fair trial by inappropriate comments of the prosecutor. As relevant here, petitioner contends that the prosecutor improperly appealed to the sympathy of the jury and denigrated defense counsel. With respect to each of these issues, the Michigan Court of Appeals concluded that petitioner had failed to preserve the issue for appeal by failing to object at trial, and reviewed the claims only for plain error. *See Brady*, 2009 WL 3365776, at *3, *5, *6. The contemporaneous objection rule upon which the Michigan Court of Appeals relied is firmly established. *See, e.g.*, *People v. Duncan*, 402 Mich. 1, 15-16, 260 N.W.2d 58, 61-62 (1977); *People v. Curry*, 175 Mich. App. 33, 39, 437 N.W.2d 310, 314 (1989). Because the state court clearly and expressly relied on this state procedural rule with respect to petitioner's evidentiary and prosecutorial misconduct claims, they are procedurally defaulted and review is barred absent a showing of either cause and prejudice or a fundamental

8

miscarriage of justice. *See Engle v. Isaac*, 456 U.S. 107, 125-129 (1982) (state contemporaneous objection rule is adequate procedural bar precluding consideration of habeas claims). This is so even through the court of appeals reviewed the merits of the claims in determining whether petitioner could establish plain error. *See White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005) ("[P]lain error review by the state court does not constitute a waiver of procedural default rules.").

Nevertheless, petitioner asserts that counsel was ineffective with respect to these claims. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

2.    *Claims VIII-X*

Claims VIII through X comprise the three claims raised by petitioner in his *pro se* brief to the Michigan Court of Appeals. Following the court of appeals decision, counsel filed an application for leave to appeal in the Michigan Supreme Court. That application listed, in the table of contents, the claims that counsel had raised in the Michigan Court of Appeals. The application also included, however, a copy of petitioner's *pro se* court of appeals brief as an appendix to the application. Respondent argues that this was insufficient to exhaust petitioner's claims, and that

9

because there is no further avenue petitioner could now pursue to exhaust the claims, they are procedurally defaulted. The Court should reject this argument.

The federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). A petitioner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)). A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law. *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003)). Further, the petitioner must fairly present the claim at each level of state court review. *See O'Sullivan*, 526 U.S. at 845-47. In *Coleman v. Thompson*, *supra*, the Supreme Court suggested in dicta that where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman*, 501 U.S. at 735 n.*. Although the *Coleman* footnote was dicta, it has

subsequently been applied by both the Supreme Court and the Sixth Circuit. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995) (per curiam). Where no further avenues to present a claim exist, the claim is deemed technically exhausted, and the question becomes solely whether the claim is barred by a procedural default. *See Broom v. Mitchell*, 441 F.3d 392, 399-400 (6th Cir. 2006).

Respondent's argument that petitioner has no further avenue of state court review is without merit. Petitioner can file a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508. Because petitioner has not already pursued such a motion, he would not be precluded from doing so by MICH. CT. R. 6.502(G). As respondent correctly notes, petitioner would likely be unable to obtain *relief* on these claims, either because the state courts would find them to have been already raised on appeal, *see* MICH. CT. R. 6.508(D)(2), or because petitioner could have raised the claims on appeal but failed to do so, *see* MICH. CT. R. 6.508(D)(3). However, that an avenue of review is likely to provide no relief does not mean that the avenue is not available to be pursued. *See Godbolt v. Russell*, 82 Fed. Appx. 447, 450 (6th Cir. 2003); *Fatir v. Thomas*, 106 F. Supp. 2d 572, 582 (D. Del. 2000).

Further, it is not clear that petitioner failed to adequately raise his claims in the Michigan Supreme Court. To be sure, counsel's application for leave to appeal did not directly assert these three claims in the Michigan Supreme Court. Counsel did, however, attach petitioner's *pro se* brief as an appendix to the application, and because petitioner's brief raised claims distinct from those raised by counsel there would have been no reason to do so had petitioner not intended to raise these claims in the Michigan Supreme Court. Certainly, nothing in the Michigan Supreme Court's form

11

order denying petitioner's application for leave to appeal provides any clue as to whether the court considered these claims properly before it.  Nothing in the Michigan Court Rule governing applications for leave to appeal speaks to this question.  *See* MICH. CT. R. 7.302.  The Michigan Supreme Court has suggested that Administrative Order 2004-6, Standard 4, which provides the right to file a *pro se* brief in the court of appeals, does not apply in the Michigan Supreme Court, *see People v. Waclawski*, 488 Mich. 929, 929, 790 N.W.2d 136, 137 (2010), but has not explicitly so held.  Further, no Michigan federal court appears to have considered this issue in the context of exhaustion and procedural default.  Neither the exhaustion nor the procedural default doctrine is jurisdictional.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995).  In light of the lack of any guidance on this issue from either the Michigan or federal courts, it is better to proceed to the merits.

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

12

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Sufficiency of the Evidence (Claims I-III)*

In his first three claims, petitioner contends that the evidence was insufficient to support his convictions for assault with intent to do great bodily harm, unlawful confinement, and resisting a

14

police officer.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

       1. *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam).  The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).  Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor

15

of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

2.    *Analysis*

*a. Assault*

Petitioner first argues that the prosecution presented insufficient evidence to support his conviction for assault with intent to commit great bodily harm less than murder. Under Michigan law, "[t]o convict a defendant of assault with intent to do great bodily harm less than murder, the prosecution must establish the following elements: (1) an attempt or offer with force or violence to

16

do corporal hurt to another, and (2) an intent to do great bodily harm less than murder."  Lovely v.

Jackson, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) (Gadola, J.) (citing MICH. COMP. LAWS §

750.84; *People v. Mitchell*, 149 Mich. App. 36, 38, 385 N.W.2d 717 (1986)), *aff'd*, 173 Fed. Appx.

437 (6th Cir. 2006); *see also*, *People v. Bailey*, 451 Mich. 657, 668-69, 549 N.W.2d 325, 331 (1996),

*amended on other grounds*, 453 Mich. 1204, 551 N.W.2d 163 (1996).  As with other mental-state

elements, intent to commit great bodily harm need not be proved by direct evidence, but rather may

be proved by circumstantial evidence and reasonable inferences drawn from the evidence.  *See*

*Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998). "Furthermore, because it is difficult to prove

a defendant's state of mind, minimal circumstantial evidence is sufficient." *Tucker v. Palmer*, 541

F.3d 652, 660 (internal quotation omitted).

Petitioner contends that the evidence was insufficient to show that he intended to commit

great bodily harm.  Specifically, relying on *People v. Emerson*, 319 Mich. 225, 29 N.W.2d 161

(1947), petitioner argues that the victim's injuries do not support a finding that he intended to inflict

great bodily harm.  He argues that despite the victim's testimony regarding the nature of the attack,

she sustained only bruises, and did not have any lacerations or internal injuries.  The Michigan Court

of Appeals rejected petitioner's argument, noting that "the offense depends on the defendant's intent,

not any actual harm to the victim."  *Brady*, 2009 WL 3365776, at *1.  The court then reasoned that

the victim's testimony regarding the circumstances of the assault was sufficient to establish

petitioner's intent:

> In this case, testimony that defendant attempted to smother the victim several times
> with a pillow, and that he loaded a gun, pointed it at the victim, and pulled the
> trigger, was sufficient to enable the jury to find beyond a reasonable doubt that
> defendant assaulted the victim with the intent to do great bodily harm.  The facts that
> the victim was able to resist defendant's attempts to smother her, and that the gun did
> not fire when defendant pointed it pulled the trigger, does not negate defendant's

17

intent.

*Id*. This determination was reasonable.

As the court of appeals correctly observed, under Michigan law no showing of physical injury is required to establish the elements of assault with intent to commit great bodily harm. *See People v. Harrington*, 194 Mich. App. 424, 430, 487 N.W.2d 479, 483 (1992). This being the case, it is clear that the victim's testimony provided sufficient circumstantial evidence for the jury to conclude beyond a reasonable doubt that petitioner intended to inflict great bodily harm. The victim testified that petitioner assaulted her with his fists, a knife handle, and a dresser drawer, attempted to smother her with a pillow, and attempted to fire a gun at her. These actions provide strong evidence that petitioner intended to inflict great bodily harm. *See People v. Lugo*, 214 Mich. App. 699, 711, 542 N.W.2d 921, 927 (1995); *People v. Fobb*, 145 Mich. App. 786, 788, 378 N.W.2d 600, 601 (1985) (per curiam). To the extent petitioner is arguing that the limited nature of the victim's injuries calls into question her testimony, that was a matter for the jury to resolve. *See Jackson*, 443 U.S. at 326. In light of the victim's testimony, the jury's verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Thus, the Michigan Court of Appeals's rejection of this claim was reasonable, and petitioner is not entitled to habeas relief.

### b. Unlawful Confinement

Petitioner next contends that the evidence was insufficient to support his conviction for unlawful confinement. Michigan's unlawful confinement statute provides, in relevant part:

> A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:
> (a) The person is restrained by means of a weapon or dangerous instrument.
> (b) The restrained person was secretly confined.
> (c) The person was restrained to facilitate the commission of another

18

felony or to facilitate flight after commission of another felony.

MICH. COMP. LAWS § 750.349b(1). The statute further provides that: "'Restrain' means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." MICH. COMP. LAWS § 750.349b(3). Defendant was convicted of forcible unlawful confinement under § 750.349b(1)(a). He contends that the evidence was insufficient to show either that he restrained the victim, or that he did so with a gun. The Michigan Court of Appeals's rejection of this claim, *see Brady*, 2009 WL 3365776, at *2, was reasonable.

First, there was more than sufficient evidence to prove beyond a reasonable doubt that petitioner retrained the victim. As noted above, "restrain" under the statute requires only that the victim's "movements" be "restricted." MICH. COMP. LAWS § 750.349b(3). Here, the victim testified that petitioner kept her in her house, and forced her to go from room to room with him. This testimony was sufficient to establish that petitioner restrained the victim within the meaning of the statute. *See Pratt v. Ludwick*, No. 2:10-CV-10641, 2012 WL 3112411, at *20 (E.D. Mich. July 31, 2012) (Steeh, J.); *People v. Railer*, 288 Mich. App. 213, 218, 792 N.W.2d 776, 779-80 (2010); *People v. Bennett*, No. 286548, 2009 WL 5150078, at *2 (Mich. Ct. App. Dec. 29, 2009) (per curiam). Further, the victim's testimony established that at various times during this restraint petitioner was armed with a knife, a rifle, and a pistol. While the jury acquitted petitioner of assaulting petitioner with a knife and a rifle, it found him guilty of assaulting her with a pistol. Further, even though the jury acquitted petitioner of assaulting the victim with the knife and rifle, it could still have concluded that petitioner used these weapons to accomplish an unlawful

19

confinement.  Thus, the jury's verdict was not "so insupportable as to fall below the threshold of

bare rationality," *Coleman*, 132 S. Ct. at 2065, and petitioner is therefore not entitled to habeas relief

on this claim.

### c. Resisting

Petitioner next contends that the prosecution presented insufficient evidence to support his

convictions for resisting or obstructing an officer.  Michigan's resisting arrest statute provides, in

relevant part: "[A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or

endangers a person who the individual knows or has reason to know is performing his or her duties

is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than

$2,000.00, or both."  MICH. COMP. LAWS § 750.81d(1).  The statute defines "person" to include,

*inter alia*, police officers, *see id*. § 750.81d(7)(b)(i), and defines "obstruct" as, *inter alia*, a knowing

failure to comply with an officer's command, *see id*. § 750.81d(7)(a).  Thus,

> [u]nder MCL 750.81d(1), the elements required to establish criminal liability are: (1)
> the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or
> endangered a police officer, and (2) the defendant knew or had reason to know that
> the person that the defendant assaulted, battered, wounded, resisted, obstructed,
> opposed, or endangered was a police officer performing his or her duties.
> "'Obstruct' includes the use or threatened use of physical interference or force or a
> knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

*People v. Corr*, 287 Mich. App. 499, 503, 788 N.W.2d 860, 863 (Mich. Ct. App. 2010) (citations

omitted).

Petitioner contends that the evidence was insufficient to show that he obstructed or resisted

the officers.  He argues that the evidence establishes that the sequence of events from the officers'

entry to their placing him under arrest happened in a matter of seconds, and that there was no

evidence that he did anything other than stand looking at the officers.  The Michigan Court of

20

Appeals rejected petitioner's claim, reasoning:

> The evidence that two officers repeatedly ordered defendant to get down on the ground, and that defendant ignored those commands, stood up, and continued standing until the officers physically placed him on the ground, and that defendant thereafter refused to comply with the officers' commands to place his arms at his side, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find that the essential elements of this offense were proven beyond a reasonable doubt.

*Brady*, 2009 WL 3365776, at *2. This determination was reasonable. To be sure, the circumstances involving the arrest happened quickly. Not so quickly, however, that petitioner did not have time to stand up from his crouching position and look at the officers for a moment of time. The officers testified that they repeatedly shouted, upon entering the room in which petitioner was located, "police, get down." In these circumstances, the jury's verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. To the extent petitioner argues that the evidence was insufficient to show that he intended to resist the officers, this argument is without merit. The resisting statute "contains no mention of a knowing and willful intent to resist arrest." *People v. Whorton*, No. 270607, 2007 WL 4125315, at *4 (Mich. Ct. App. Nov. 20, 2007) (per curiam). Rather, as the *Corr* court explained, all that is required is that the defendant have committed one of the prohibited acts (*i.e.*, assault, obstruct, &c.) while the defendant knew or had reason to know that the person was a police officer performing his or her duties. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Prosecutorial Misconduct (Claims IV-V & VIII-IX)*

Petitioner next raises several prosecutorial misconduct claims. In Claim IV, petitioner contends that he was denied a fair trial by the prosecutor's failure to produce a *res gestae* witness. In Claim V, he contends that he was denied a fair trial by various improper remarks of the

21

prosecutor. In Claim VIII, petitioner argues that the prosecutor committed misconduct by presenting perjured testimony. Finally, in Claim IX he contends that the prosecutor failed to provide him with discovery. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

    1.    *Res Gestae Witness*

Petitioner contends that he was denied a fair trial by the prosecutor's failure to produce Davis Wilson, a *res gestae* witness to the resisting charges who was present when petitioner was arrested. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

To the extent petitioner's claim is based solely on the prosecutor's alleged failure to comply with the Michigan res gestae statute, the claim is not cognizable on habeas review. It is well established that errors of state law do not provide a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, petitioner's claim that the prosecutor violated state law regarding the production of res gestae witnesses is not cognizable on habeas review. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001) (Tarnow, J.).[3]

To the extent petitioner argues that the prosecutor's failure to produce this witness violated his rights under the Sixth Amendment's Compulsory Process Clause, his claim is without merit. The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor[.]" U.S. CONST. amend.

---

[3]Although there is no published Sixth Circuit decision directly on point, in a number of unpublished decisions the Sixth Circuit has reached this conclusion. *See, e.g.*, *Smith v. Elo*, No. 98-1977, 1999 WL 1045877, at *1 (6th Cir. Nov. 8, 1999) (per curiam); *Moreno v. Withrow*, No. 94-1466, 1995 WL 428407, at *1 (6th Cir. July 19, 1995) (per curiam); *Lewis v. Jabe*, No. 88-1522, 1989 WL 145895, at *3 (6th Cir. Dec. 4, 1989) (per curiam); *Atkins v. Foltz*, No. 87-1341, 1988 WL 87710, at *2 (6th Cir. Aug. 24, 1988) (per curiam).

VI.  As a general matter, the Compulsory Process Clause "grants a criminal defendant the right to call witnesses that are 'material and favorable to his defense." *Wong v. Money*, 142 F.3d 313, 324 (6th Cir. 1998) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Unfortunately, the Supreme Court has provided little guidance on the exact contours of the Compulsory Process Clause.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 55 & n. 12 (1987) (noting that the Compulsory Process Clause has rarely been a factor in the Court's decisions).  Nevertheless, some general principles do exist to guide the Court's determination.  First, as a general matter the clause establishes, "at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Id.* at 56.  Second, it is clear that the right to compulsory process is not absolute; thus, in certain circumstances a witness may be precluded from testifying as a sanction for defendant's failing to comply with a discovery order, *see Taylor v. Illinois*, 484 U.S. 400, 410-14 (1988), and testimony is subject to general evidentiary rules such as those governing relevance and privilege, *see Washington v. Texas*, 388 U.S. 14, 23 n.21 (1967); *Smith v. Cromer*, 159 F.3d 875, 882 (4th Cir. 1998).

Here, petitioner cannot show that he was denied his right to compulsory process for two reasons.  First, it is not clear that petitioner appropriately sought to locate and call Wilson as a witness.  Prior to trial, petitioner filed several *pro se* motions, including a motion for the address of Wilson.  Counsel made it clear, however, that he did not believe that Wilson was a necessary witness.  The prosecutor nevertheless agreed to try and locate Wilson's address.  *See* Mot. Tr., dated 2/4/08, at 12-13.  On the first day of trial, counsel indicated that, at petitioner's request, he prepared a subpoena for Wilson and requested the prosecutor's help in locating him.  The prosecutor agreed

23

to try and locate Wilson, while noting that Wilson had not been listed as a witness on the witness list filed by counsel.  Rather, Wilson had been listed on a *pro se* witness list filed by petitioner himself.  *See* Trial Tr., dated 3/4/08, at 7-8.  Neither petitioner nor counsel again raised the matter–petitioner and counsel did not object to the prosecution's failure to call Wilson, they did not request a due diligence hearing, and they did not call Wilson as a witness.  In these circumstances, as the Michigan Court of Appeals observed, "there is no basis for concluding that reasonable assistance was not provided."  *Brady*, 2009 WL 3365776, at *3.  It is thus, at best, questionable whether petitioner properly sought the prosecutor's assistance in locating Wilson or sought to present him as a witness.  *See Green v. Estelle*, 488 F.2d 918, 920 (5th Cir. 1973) (no denial of compulsory process where defendant did not attempt to call witness or ask for a continuance to do so, and the "state court was left totally unaware of the defendant's desire to call" the witness); *United States v. Mickens*, 837 F. Supp. 745, 748 (S.D. W. Va. 1993), *aff'd*, 53 F.3d 329 (4th Cir. 1995).

In any event, even if petitioner properly requested the prosecutor's assistance and the prosecutor failed to exercise due diligence, petitioner is still unable to show a violation of his right to compulsory process.  As the Supreme Court has explained, "more than mere absence of testimony is necessary to establish a violation of the right [to compulsory process]."  *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866 (1982).  The Sixth Amendment does not provide a defendant the right to process for obtaining any witness, only "witnesses in his favor."  U.S. CONST. amend. VI.  "This language suggests that [a defendant] cannot establish a violation of his constitutional right to compulsory process merely by showing that [he was deprived of witnesses' testimony].  He must at least make some plausible showing of how their testimony would have been both material and

24

noncumulative evidence in support of his defense.  *See Valenzuela-Bernal*, 458 U.S. at 873 (defendant must show that the evidence "would have been material and favorable in ways not merely cumulative to the testimony of available witnesses.").  Petitioner has failed to show how any testimony by Wilson would have been favorable.  According to petitioner, Wilson was in the home where he was arrested.  Thus, Wilson's testimony would have been irrelevant to the bulk of the charges against him.  The only possible relevance of Wilson's testimony would be to the resisting arrest charges.  As the court of appeals explained, however, Wilson was not a witness to the arrest.  All of the testimony indicated that Wilson was in the basement of the home, while petitioner was arrested in the upstairs kitchen.  *See Brady*, 2009 WL 3365776, at *4; Trial Tr., dated 3/6/08, at 38-39, 51.  As the court of appeals explained,

> [a]t most, Wilson could have offered testimony about what he heard, if anything. The principal issue at trial, however, was not whether the officers made a lawful command, but whether defendant failed to comply with the officers' commands. Because Wilson was in the basement, he was not in a position to observe defendant's conduct in reaction to the officers' commands.

*Brady*, 2009 WL 3365776, at *4.  Because nothing in the record suggests that Wilson could have provided favorable testimony that petitioner complied with the officers' commands, he cannot show that he was denied his right to compulsory process.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 2.  *Improper Comments*

Petitioner next contends that he was denied a fair trial by various improper comments made by the prosecutor during closing argument.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a.  *Clearly Established Law*

25

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case-determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In reviewing whether prosecutorial comments deprived a defendant of a fair trial, a court may not consider the remarks in isolation, but must consider the remarks in the context of the entire trial, including the prosecutor's appropriate comments, the court's instructions to the jury, and the evidence presented in the case. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young*, 470 U.S. at 11.

### b. Analysis

Petitioner argues that the prosecutor improperly appealed to the jury's sympathy by repeatedly referring to the "horror" and "torture" the victim experienced, *see* Trial Tr., dated 3/7/08, at 46, 56, 66, and by asking the jury to "send a message," *id*. at 95. The description of the victim's experience as "torture" and a "horror" was an accurate reflection of the victim's testimony. In any

event, even if these comments were somewhat over-emotional, the prosecutor did not ask the jury to convict out of sympathy for the victim or appeal to the jury to act as the conscience of the community.  On the contrary, viewed in context the prosecutor's comments were based on the evidence presented at trial.  Even if improper the prosecutor's references to the victim were much less prejudicial than other comments referring to victims which have been upheld on habeas review.  *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999) (en banc).  "Indeed, *Darden* itself held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief."  *Parker*, 132 S. Ct. at 2155 (citing *Darden*, 477 U.S. at 180, nn. 11 & 12 (prosecutor referring to defendant as an "animal" and stating "I wish I could see [the defendant] with no face, blown away by a shotgun.")).  Finally, any potential prejudice was cured by the trial court's instruction to the jury that it must decide the case solely on the evidence and "must not let sympathy or prejudice influence your decision."  Trial Tr., dated 3/7/08, at 105; *see Baylor v. Renico*, No. 05-CV-71624, 2009 WL 982212, at *7 (E.D. Mich. Apr. 13, 2009) (Hood, J.); *Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999) (Cleland, J.).

Petitioner also contends that the prosecutor improperly denigrated defense counsel.  During closing argument, defense counsel argued that the victim was not credible and extensively attacked what he viewed as significant flaws in the police investigation of the case, including failing to

27

canvass the neighborhood, collect evidence, and test the firearms.  *See* Trial Tr., dated 3/7/08, at 69-90.  The prosecutor devoted her rebuttal argument to refuting defense counsel's theory of the case, explaining why the police investigation was adequate.  *See id*. at 91-95.  In this context, the prosecutor stated:

> He got caught, and that's a very nice story Mr. Dennis told, and we got to listen to all the evidence before, he gets to see all the police reports, this was now say June, a lot of time to come up with that story, you got to do something, we have got pictures, we have got bullet holes, we have got testimony, we have got the neighbor that saw him out there yelling at him, smelled like alcohol, said he was off, wasn't right.  He was off, wasn't right.

*Id*. at 93.  Petitioner cannot show that this comment denied him a fair trial.  First, it was responsive to petitioner's strategy in defending the case, as laid out in counsel's closing argument.  *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986)(one factor in evaluating claims of prosecutorial misconduct is whether the prosecutor's statements were "invited by or was responsive" to the defense.).  More importantly, the prosecutor's comment was preceded and followed by her discussion of why the evidence showed that the police investigation was adequate and petitioner was guilty.  The comment did not disparage petitioner or his counsel personally, and was directed solely at whether the jury should accept petitioner's theory of the case.  The comment falls far short of even more egregious comments which have been held not to deprive a defendant of a fair trial.  *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"); *See United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct, noting that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth."); *Lindgren v.*

*Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws"). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner next argues that the prosecutor improperly vouched for the credibility of the witness. During closing argument, when discussing the burden of proof and elements of the crime, the prosecutor addressed defense counsel's opening statement in which counsel stated that the assault with intent to commit murder was a very serious charge. The prosecutor agreed that this was a serious charge, and stated: "You better believe the police took it seriously. An old woman got beat up and tortured for ten hours. They take it seriously, wanted to get him in custody right away, that's how serious they took it. That is how serious they took her statement and her word." Trial Tr., dated 3/7/08, at 54. Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[4] Here, as the Michigan Court of Appeals correctly observed, *see Brady*, 2009 WL 3365776,

---

[4]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

29

at *7, the prosecutor's comments did not place the prestige of the government behind the witness by making personal assurances of a witness's veracity, nor did the prosecutor imply that she knew of facts that had not been introduced.  Rather, the prosecutor pointed to the evidence of the police response, evidence that was relevant in light of petitioner's defense of the charges.  Thus, the prosecutor's comments were merely a fair characterization of the evidence presented to the jury based on his summation of that evidence.  As such, they did not constitute impermissible vouching for the credibility of the witnesses or the guilt of petitioner.  *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence)

Finally, petitioner contends that the prosecutor improperly expressed a personal belief in his guilt.  Immediately after defense counsel concluded his closing argument with a discussion of the Innocence Project and the number of people who have been exonerated, the prosecutor began her rebuttal argument: "Thank you, your Honor.  He is not sitting there an innocent man, Ladies and Gentlemen."  Trial Tr., dated 3/7/08, at 90.  Counsel immediately objected, and a sidebar conference was held.  The court instructed the jurors to "disregard that remark," *id*. at 91, and the prosecutor continued: "Testimony has shown and proven that he is guilty of all these crimes. . . ."  *Id*.  It is clear, however, that the prosecutor's comment was the introductory statement to a discussion of how the "testimony ha[d] shown and proven" that petitioner was guilty.  Such a comment is not improper, and it is only the timing of counsel's objection which disconnected the prosecutor's initial statement from her discussion of the evidence.  In any event, the Court's instruction to the jury to disregard

30

the statement–an instruction which the Court must presume the jury followed, *see Richardson v. Marsh*, 481 U.S. 200, 206 (1987)–taken together with the court's other instructions and the evidence in the case, rendered any error harmless.

In short, the Michigan Court of Appeals thoroughly analyzed each of petitioner's prosecutorial misconduct claims, applying the appropriate due process test under *Darden*. For the reasons set forth above, the Michigan Court of Appeals's application of that test was reasonable. "[B]ecause the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations,' [this Court] ha[s] no warrant to set aside the [Michigan Court of Appeals's] conclusion." *Parker*, 132 S. Ct. at 2155 (citation omitted) (quoting *Yarborough*, 541 U.S. at 664). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on petitioner's prosecutorial misconduct claims.

3. *Perjured Testimony*

Petitioner next contends that he was denied a fair trial by the prosecutor's presentation of perjured testimony. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Clearly Established Law*

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely

31

allows false testimony to go uncorrected, *see id.* at 269.  To succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material.  *See Coe v. Bell*, 161 F.3d 320, 343

With respect to the first element, it is well established that petitioner bears the burden of proving that the testimony amounted to perjury.  As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured.  Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."  *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976).  (6th Cir. 1999).  As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'").  In other words, petitioner must show that the testimony was "indisputably false."  *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

With respect to the second element, as the Sixth Circuit has explained in order for a witness's

32

perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. *See, e.g.*, *Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States*, No. 94-3469, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id*. at 103-04 & nn. 8-9 (discussing cases). At a minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial." *LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge)); *cf. Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1 (1983) ("The Court has held that the prosecutor's knowing use of perjured testimony violates due process, but has not held that the false testimony of a police officer

33

in itself violates constitutional rights.").

*b. Analysis*

Petitioner contends that the prosecutor presented several instances of false testimony at trial.

Specifically, petitioner argues that the following testimony was false:

- Officer Murdock's testimony that plaintiff was in possession of a firearm at the time of his arrest, which was contradicted by Officer Murdock's testimony at the preliminary examination that the victim told the officer there was a rifle and hand gun in her home and that these items were taken into police custody at the time;

- testimony regarding the number and location of bullet holes, which differed in the testimony of Officer Murdock and Detective Sellers;

- the plaintiff's testimony regarding the location of firearms in her house and petitioner's use of them, which was contradicted by statements recorded in Officer Murdock's report and testimony at the preliminary examination; and

- Detective Seller's testimony that it was petitioner who requested that the firearms be examined for fingerprints.

The Michigan Court of Appeals rejected petitioner's claim, reasoning that petitioner had

failed to establish that the prosecution presented any perjured testimony.  The court explained:

> Contrary to what defendant argues, the testimony did not establish that defendant could not have possessed the gun that allegedly was in his possession at the time of his arrest because it had previously been found in the victim's house. The testimony on which defendant relies only generally addressed the weapons that were taken into custody and secured for safekeeping by the police. However, that testimony did not establish that all of the weapons were found in the victim's home. The victim's home was searched for weapons after she contacted the police, but the officer also testified that he was given information that defendant might be armed with a handgun. The officer did not testify at the preliminary examination that the pistol was found in the home, and not on defendant at the time of his arrest.
> Defendant also claims that false testimony was presented regarding the number of bullet holes found in the victim's home, but the testimony merely disclosed that the home was searched at two different times, by different officers, for different reasons. The fact that the officers' testimony differed concerning the number of bullet holes they observed does not mean that either officer's testimony was false. Similarly, the fact that there were some inconsistencies between the

34

> victim's preliminary examination testimony, trial testimony, and account of the offense in the police report does not prove that false testimony was knowingly presented at trial. In addition, Officer Sellers's testimony that a firearm was tested for fingerprints at defendant's request is supported by the record of the December 6, 2007, pretrial hearing, which shows that defense counsel requested that the firearm be forensically examined for finger prints.

*Brady*, 2009 WL 3365776, at *10.

The Michigan Court of Appeals's discussion of the evidence was reasonable, and is supported by the record. *See* 28 U.S.C. § 2254(d)(2). Specifically, the record does not establish that Officer Murdock testified that all of the guns had been seized from the victim's home, and the record supports the court of appeals's conclusion that petitioner did in fact request fingerprint testing. At most, petitioner has pointed to some inconsistencies in the testimony. He has not, however, demonstrated that any of the witnesses made a knowing false statement of fact. Further, petitioner has not shown that the prosecutor knew of any allegedly false testimony. Speculative allegations of prosecutorial knowledge are insufficient to establish a *Napue/Giglio* claim. *See Skains v. California*, 386 Fed. Appx. 620, 621-22 (9th Cir. 2010). Because petitioner has failed to establish either that any knowingly false testimony was presented, or that the prosecutor knew of any such false testimony, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

4.    *Denial of Discovery*

Petitioner next argues that he was denied a fair trial by the prosecutor's refusal to provide various materials requested in discovery. Specifically, he contends that he was denied: (1) the criminal history of the victim; (2) information concerning the ownership of the rifle and pistol; (3) telephone records for the victim's home; and (4) information regarding the victim's medications. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

35

*a. Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). However, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, in order to establish a *Brady* violation, petitioner must show that the prosecutor withheld evidence which was both (1) favorable to the accused and (2) material to guilt or punishment. *See United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. If all three of these questions are answered in the affirmative, petitioner has established a constitutional error entitling him to the writ of habeas corpus and "there is no need for further harmless-error review." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). If, on the other hand, any of these questions is answered in the negative, then petitioner has failed to establish a *Brady* violation. Finally, although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require

the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also, Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

*b. Analysis*

As noted above, petitioner had no constitutional right to discovery, *see Weatherford*, 429 U.S. at 559, and he therefore cannot establish his entitlement to habeas relief merely by demonstrating that the prosecution failed to provide discovery information in violation of a court order. Any violation of the state law discovery rules raises an issue not cognizable on habeas review. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004) (Gadola, J.); *Meade v. Lavigne*, 265 F. Supp. 2d 849, 867 (E.D. Mich. 2003) (Tarnow, J.). Rather, petitioner must show that he was deprived of material, exculpatory information by the prosecution's omission. Petitioner has failed to make this showing.

With respect to the victim's criminal history, the court of appeals noted that "the trial court granted defendant the right to obtain information about the victim's criminal history," and that petitioner did not "show[] that the victim had any criminal history that was not disclosed." *Brady*, 2009 WL 3365776, at *11. Petitioner has likewise failed to make this showing here. Further, petitioner cannot show that the victim's criminal history, if any, was material. Under *Brady*, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987); *accord Strickler*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 682 (1985) (Blackmun, J.). Here, petitioner does not allege that the victim actually had any criminal

37

history.  And even if she had such a history, it would not have been admissible to impeach her credibility unless she had been convicted of a crime involving an element of theft or dishonesty.  *See* MICH. R. EVID. 608(b).  Further, the victim was extensively impeached by counsel on cross-examination, and any further impeachment would have been cumulative.  *See United States v. Avellino*, 136 F.3d 249, 257 (2d Cir.1998) (on *Brady* claim based on suppression of impeachment evidence, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.").

With respect to the weapons ownership issue, as the court of appeals noted "[t]estimony regarding ownership of the weapons used during the offense was presented at the preliminary examination, as well as at trial."  *Brady*, 2009 WL 3365776, at *11.  Petitioner has failed to allege that any other specific ownership information was not disclosed.  Moreover, petitioner does not address how the ownership information was material and favorable.  There was no question that petitioner lived in the home and therefore had access to the firearms.  The only question was whether he used those firearms in his assault of the victim.  Thus, petitioner cannot show that the prosecutor suppressed material, exculpatory information relating to gun ownership.

With respect to the telephone records, as the court of appeals observed "the trial court granted defendant's request for access to the victim's telephone records and provided him with funds to obtain those records from the telephone company."  *Brady*, 2009 WL 3365776, at *11.  There is no suggestion that the telephone records were in the possession of the prosecution; rather, it was petitioner's responsibility to subpoena those records from the telephone service provider.  It is well

established that "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose."  *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotations omitted); *see also*, *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004).  Here, the trial court provided petitioner the means to obtain the victim's telephone records, and the prosecution was not required to do anything more to obtain those records.

Finally, with respect to the victim's medical records, as the court of appeals explained, petitioner was aware of the victim's medications, and he has failed to show how "any other undisclosed medical information was necessary for his defense." *Brady*, 2009 WL 3365776, at *11. Extensive testimony and argument was made regarding the lack of any serious injury to the victim, and thus medical records of her treatment following the assault would have added nothing to petitioner's defense.  *See, e.g.*, Trial Tr., dated 3/5/08, at 87-115.  As to the victim's medications, the treating doctor was cross-examined regarding the medications the victim was taking at the time of the assault.  As explained by the doctor, these included an anti-depressant and a mood-altering barbiturate.  *See id*. at 110-11.  Thus, the possibility that the victim's testimony was inaccurate as a result of her medications was known to petitioner and was placed before the jury.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Sentencing and Restitution (Claims VI-VII)*

Petitioner next raises challenges to his sentence.  In Claim VI, petitioner contends that he was sentenced on the basis of inaccurate information.  In Claim VII, petitioner argues that the trial court erred in ordering restitution for conduct which he denied.  The Court should conclude that

petitioner is not entitled to habeas relief on these claims.

1.      *Inaccurate Information*

Petitioner contends that several sentencing guidelines offense variables (OV) were incorrectly scored based on inaccurate information.  Specifically, he contends that:

- OV-1, "firearm discharged at or toward a human being," MICH. COMP. LAWS § 777.31, was inaccurately scored at 25 points because the victim did not explicitly testify that petitioner shot at or toward her.

- OV-7, aggravated physical abuse, MICH. COMP. LAWS § 777.37, was inaccurately scored at 50 points because he was acquitted of assaulting the victim with the drawers, knife, and rifle, and the remaining assaults and the victim's injuries did not exhibit "excessive brutality."

- OV-8, victim asportation or captivity, MICH. COMP. LAWS § 777.38, was inaccurately scored at 15 points because the offense variable provides that zero points must be scored if the offense is kidnapping, and the unlawful confinement charge is a form of kidnapping.

- OV-19, interference with the administration of justice, MICH. COMP. LAWS § 777.49, was inaccurately scored at 15 points, because he did not threaten or use force against the police officers.

Petitioner contends that, had these offense variables been accurately scored, his total offense variable score would have been 85 points instead of 165 points, resulting in a significantly shorter sentence.  The Michigan Court of Appeals rejected petitioner's claim, finding no prejudice because "even if the challenged variables were scored as he contends they should be, his sentencing guidelines range would not change."  *Brady*, 2009 WL 3365776, at *8.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

With respect to the scoring of the guidelines, petitioner's claim is not cognizable on habeas review.  A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.

1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

Petitioner's contention that he was sentenced on the basis of inaccurate information does not alter this conclusion. In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. It is well established, however, that a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also, Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985).

41

"A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

Here, petitioner cannot show that he was sentenced based on any inaccurate information. With respect to OV-7 and OV-8, petitioner's challenge is not to the accuracy of the information relied upon by the trial court. Rather, he contends that the facts relied upon by the trial court were insufficient as a legal matter to support the trial court's scoring of those variables. As noted above, the legal sufficiency of the facts to support the scoring of an offense variable is a question of state law which is not cognizable on habeas review. *See Norton v. Lafler*, No. 08-12797, 2010 WL 5672743 (Apr. 19, 2010) (Komives, M.J.), *magistrate judge's report adopted*, 2011 WL 318099, at *2 (E.D. Mich. Jan. 31, 2011) (Hood, J.); *Southward v. Warren*, No. 2:08-CV-10398, 2009 WL 6040728, at *19 (July 24, 2009) (Komives, M.J.), *magistrate judge's report adopted*, 2010 WL 733035, at *2 (E.D. Mich. Feb. 26, 2010) (Steeh, J.). With respect to the remaining offense variables, petitioner's argument boils down to a dispute over the trial court's resolution of factual questions. However, this is insufficient to establish that he was sentenced on the basis of material false information in violation of his right to due process under *Townsend* and *Tucker*. As the Court made clear in *Townsend*, an alleged error by the trial court in resolving a disputed factual question at sentencing does not constitute reliance on materially false information:

> Nor do we mean that mere error in resolving a question of fact on a plea of guilty by
> an uncounseled defendant in a non-capital case would necessarily indicate a want of

> due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

*Townsend*, 334 U.S. at 741. "Thus, what is essential is that the sentencing judge decide upon the sentence after being made aware of all exculpatory evidence and of the defendant's version of the story." *United States v. Von Saltzer*, 532 F. Supp. 584, 586 (D. Nev. 1982). Here petitioner, through counsel, objected to the scoring of the offense variables and presented his version of the facts. *See* Sentence Tr., at 26-29. The trial judge, based on the information available, drew inferences from the facts and made factual findings. While petitioner disputes those findings, he has offered nothing to show that they were materially false. Thus, he has failed to establish a due process violation under *Townsend*, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Further, even if the trial court did rely on inaccurate information at sentencing, petitioner cannot show that his sentence was based on this inaccurate information. Petitioner does not dispute the court of appeals's conclusion that, even if the offense variables had been scored as petitioner suggests they should have been, his guideline range would have remained the same. As noted above, it is well established that a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be

43

entitled to habeas relief on this claim  petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).  Because petitioner's sentencing range was unaffected, petitioner cannot show that the trial court relied on this allegedly inaccurate information in imposing sentencing.  The best petitioner can do is argue, as he did in the Michigan Court of Appeals, that "[t]he trial court may very well have chosen a lesser based on the much lower offense score."  Def.-Appellant's Br. on Appeal, in *People v. Brady*, No. 285640 (Mich. Ct. App.), at 43.  This argument is without merit, in light of the trial judge's statement at sentencing that his "only wish is the guidelines were higher because if it was in my power, I'd put you in jail where you'd never see the light of day."  Because petitioner cannot show that his sentence was based on any materially inaccurate information, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 2. *Restitution*

Petitioner also contends that the trial court erred in imposing restitution at sentencing without first determining his ability to pay.  This claim does not provide a cognizable basis for habeas relief. The habeas statute provides that a federal court may entertain a habeas application from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Because an order of restitution has no bearing on the validity or duration of a prisoner's custody, a challenge to the order of restitution is not cognizable under § 2254.  *See Taylor v. Hamlet*, 88 Fed. Appx. 220, 220 (9th Cir. 2004); *Flores v. Hickman*, 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008); *Carter v. Smith*, No. 06-CV-11927, 2007 WL 325358, at *7 (E.D. Mich. Jan. 31, 2007) (Steeh, J.); *cf. Kaminski v. United States*, 339 F.3d 84, 89 (2d Cir.

44

2003); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Ineffective Assistance of Counsel (Claims IV & X)*

Finally, petitioner raises a number of claims asserting that his counsel was ineffective. In Claim IV, petitioner contends that counsel was ineffective for failing to request either a due diligence hearing or a missing witness instruction in connection with the *res gestae* witness whom the prosecutor failed to produce. In Claim X, petitioner contends that counsel was ineffective for failing to pursue particular lines of investigation. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must

45

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
> Establishing that a state court's application of *Strickland* was unreasonable

46

> under § 2254(d) is all the more difficult. The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*,
> 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two
> apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.
> The *Strickland* standard is a general one, so the range of reasonable applications is
> substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable. The question is whether there is any
> reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

    2.    *Analysis*

*a.  Missing Witness*

    Petitioner contends that counsel was ineffective for failing to request a due diligence hearing

or a missing witness instruction based on the prosecution's failure to produce Wilson at trial.  The

Michigan Court of Appeals rejected this claim on both prongs of the *Strickland* test, concluding that

petitioner had offered nothing to second guess counsel's determination that Wilson was not a

necessary witness, and that there was no prejudice because Wilson was not in a position to observe

the arrest.  *See Brady*, 2009 WL 3365776, at *4-*5.  This determination was reasonable.  Counsel's

strategic decisions regarding what witnesses to call at trial are "virtually unchallengeable."  *Awkal*

*v. Mitchell*, 613 F.3d 629, 641 (6th Cir. 2010).  The Court's "concern is not to decide, using

hindsight, what [it] think[s] would have been the *best* approach at trial.  Instead, [the Court]

consider[s] only if the approach ultimately taken was within 'the wide range of reasonable

professional assistance' given the circumstances."  *English v. Romanowski*, 602 F.3d 714, 728 (6th

Cir. 2010) (quoting *Strickland*, 466 U.S. at 689).  Here, petitioner cannot show that counsel's

decision that Wilson was not a necessary witness was unreasonable.  Further, petitioner cannot show

that he was prejudiced by the absence of Wilson's testimony.  It is petitioner's burden to establish

the elements of his ineffective assistance of counsel claim, *see United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Petitioner has failed to present any such evidence here. As explained above, the evidence in the record establishes that Wilson was in the basement of the home, and thus did not observe petitioner's arrest. Thus, he cannot show that he was prejudiced by the absence of Wilson's testimony or an adverse inference instruction. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Investigate

Petitioner also contends that counsel was ineffective for failing to properly investigate a number of matters. With respect to each of these issues, the Michigan Court of Appeals concluded either that counsel's performance was not deficient or that petitioner was not prejudiced. Because these determinations were reasonable, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner contends that counsel was ineffective for failing to investigate whether it was possible for him to have phoned the victim from the county jail after he was arrested. As the court of appeals explained, however, while there was a statement that petitioner had phoned the victim while detained made at his arraignment, no such information was presented at trial. *See Brady*, 2009

48

WL 3365776, at *11.  Because there was no evidence presented at trial that petitioner phoned the victim, there was no need for rebuttal evidence to show that this would not have been possible, and petitioner has failed to explain how he was prejudiced by the absence of such evidence.  Petitioner also contends that counsel should have investigated the telephone records to show that the victim's phone was, in fact, working during the time of the assaults.  As the court of appeals explained, however, "the victim's own testimony at trial established that she had a working telephone in her home during the offense," *Brady*, 2009 WL 3365776, at *12, and the police found no evidence that the phones had been damaged, two facts that counsel highlighted during closing argument, *see* Trial Tr., dated 3/7/08, at 71-73.  In light of these facts, records showing that the victim's phone was working would have added nothing to the case that the jury did not already know.

Petitioner also contends that counsel was ineffective for failing to fully investigate the medications the victim was taking and the extent of the victim's injuries.  As the court of appeals explained, however, *see Brady*, 2009 WL 3365776, at *12, counsel elicited from the victim that she was taking aspirin at the time, and from the treating physician that her use of aspirin could have exaggerated the bruising she exhibited.  Counsel also elicited from the treating physician that the victim was taking an anti-depressant and a mood-altering barbiturate.  Petitioner has failed to even speculate as to what other medication information could have been uncovered by further investigation.  Likewise, the extent of the victim's injuries was thoroughly covered in counsel's cross-examination of both the victim and the treating doctor.  Again, petitioner has failed to show what additional information regarding the victim's injuries could have been presented.

Finally, petitioner contends that counsel was ineffective for failing to properly challenge the discovery of additional bullets by the police upon the second search of the victim's home.  As the

court of appeals explained, however, "this issue was explored at trial." *Brady*, 2009 WL 3365776, at *12. The police officers testified that the first search was primarily focused on securing the house and weapons, while the second search was more thorough. Petitioner has failed to offer any basis to conclude that there was anything further to the matter, or that further investigation by counsel would have uncovered any additional exculpatory evidence.

In short, petitioner faced a number of charges supported by the testimony of a sympathetic victim. Notwithstanding this, counsel secured for petitioner an acquittal on the most serious charge facing him (assault with intent to commit murder), as well as on three additional assault charges. The trial judge commented that counsel "did a phenomenal job," and "shocked" him and his staff by securing an acquittal on the assault with intent to commit murder charge. *See* Sentence Tr., at 38. A review of the record confirms the trial judge's observation and the court of appeals's resolution of petitioner's specific ineffective assistance claims. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.       *Recommendation Regarding Certificate of Appealability*

         1.       *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a

50

certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." Fed. R. App. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either

51

grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

      2.    *Analysis*

Here, if the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also deny petitioner a certificate of appealability, for the reasons explained above. With respect to petitioner's sufficiency of the evidence claims, as explained above the prosecution presented sufficient evidence of each element of the charged offenses, and it was the responsibility of the jury to weigh any conflicts in the evidence and resolve any credibility issues. Thus, the resolution of these claims is not reasonably debatable. With respect to petitioner's prosecutorial misconduct claims, petitioner has failed to show that Wilson could have provided any material testimony, that the prosecutor's comments were prejudicially improper, that any testimony at trial was perjured, or that the prosecutor failed to disclose any material, exculpatory evidence. Thus, the resolution of petitioner's prosecutorial misconduct claims is not reasonably debatable. Likewise, it is beyond dispute that petitioner's sentencing guidelines and restitution claims are not cognizable on habeas review, and that petitioner failed to show that his sentence was based on any materially inaccurate information. Thus, the resolution of petitioner's sentencing claims is not reasonably debatable. Finally, the resolution of petitioner's ineffective assistance claims is not reasonably debatable, for the reasons explained above. Accordingly, the Court should deny petitioner a certificate of appealability.

J.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an

unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:11/2/12

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and  by
electronic means or U.S. Mail on November 2, 2012.

s/Eddrey Butts
Case Manager